**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **CRAIG CALLAWAY** | : | **Hon. Joseph H. Rodriguez** |
| | : | |
| *Plaintiff,* | : | **1:21-cv-12058** |
| | : | |
| **v.** | : | **OPINION** |
| | : | |
| **MARY SMALL SR., CITY OF ATLANTIC** | : | |
| **CITY, DEPUTY CHIEF JAMES A. SARKOS,** | : | |
| **OFFICER KEVIN FRANCIS** | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

This matter is before the Court on the Motion to Dismiss the Amended Complaint [Dkt. 17] filed by defendants Marty Small Sr. ("Small"), City of Atlantic City ("Atlantic City"), Deputy Chief James A Sarkos, and Officer Kevin Francis ("Officer Francis") (collectively "Defendants"), and the cross-motion for leave to file an amended complaint filed by plaintiff Craig Callaway ("Plaintiff"). [Dkt. 19]. For the reasons set forth below, the Court will deny Plaintiff's motion for leave as moot and grant Defendants' Motion to Dismiss without prejudice.

## I.   Factual Summary

The following facts are taken from the Plaintiff's Amended Complaint [Dkt. 16, "Am. Compl."][1] and a publicly available video clip of the events that gave rise to this lawsuit.[2] Small is the Mayor of Atlantic City, New Jersey. [Am. Compl. ¶ 6]. On May 2, 2021, Small and others appeared at a residential neighborhood in Atlantic City to campaign for his reelection as

---

[1] The Court will provide a separate procedural background below to explain the genesis of the Amended Complaint.

[2] Plaintiff cites to this video in his Amended Complaint, stating that it captures a portion of the events alleged in the Amended Complaint. [Am. Compl. ¶ 23].

1

Mayor.  [Am. Compl. ¶ 14].  Officer Francis, a police officer with the Atlantic City Police Department, provided personal security to Small as Small campaigned.  [Am. Compl. ¶ 16]. Plaintiff "came to be lawfully present on the public sidewalk" where Small was campaigning. [Am. Compl. ¶ 15].

When Plaintiff came "into view of Mayor Small, a raucous verbal altercation ensued." [Am. Compl. ¶ 18].  While the Amended Complaint does not allege who initiated the altercation, video evidence shows Plaintiff and Small screaming at one another and pacing toward and away from one another on a public sidewalk.  The Amended Complaint alleges that, during this altercation, Small "threaten[ed] violence upon Plaintiff," stating "You're gonna see … I'mma [sic] get somebody that's about that life, and let's see what you do," [Am. Compl. ¶ 27], and "I'm gonna whoop your fucking ass, bitch."  [Am. Compl. ¶ 29].  The latter statement is clearly audible in the video.  Small also "slapped a cell phone out of the hands of one bystander who had been recording the events."  [Am. Compl. ¶ 24].   The video also shows Plaintiff repeatedly calling Small a "child molester protector."[3]  Though Officer Francis was present, he did not intervene in this altercation or arrest Small.  [Am. Compl. ¶¶ 35–39].  Plaintiff alleges that he told Officer Francis that Small threatened Plaintiff and Officer Francis responded by saying "I know."  [Am. Compl. ¶ 36].

Plaintiff seeks to hold Defendants liable for Small's conduct and Officer Francis's failure to arrest Small for making "terroristic threats" toward Plaintiff in violation of state law.  [Am. Compl.  ¶¶ 31, 38].  The Amended Complaint alleges the following counts: Count I for violation of 42 U.S.C. § 1983 for "failure to intervene and arrest" against Officer Francis; Count II for

---

[3] This accusation apparently refers to Small's "relationship with an individual named Kayan Frazier – a cousin of Mayor Small's wife, La'Quetta Small – who is presently incarcerated on charges resulting from the sexual abuse and exploitation of minor children."  [Am. Compl. ¶ 19].

"deliberate indifference" in violation of 42 U.S.C. § 1983 against Officer Francis; Count III for

"selective and discriminatory enforcement of law" in violation of 42 U.S.C. § 1983 against

Officer Francis; Count IV for "municipal liability for unconstitutional custom or policy" under

42 U.S.C. § 1983 against Atlantic City; Count V for failure to train and supervise under 42

U.S.C. § 1983 against Atlantic City; Count VI for civil conspiracy to interfere with civil rights

against Small and Officer Francis in violation of 42 U.S.C. § 1985(3); Count VII for gross

negligence against all Defendants; Count VIII for negligence as to all Defendants; Count IX for

assault as to Small; Count X for violation of the New Jersey Civil Rights Act against Small and

Officer Francis; and Count XI for common-law civil conspiracy against Small and Officer

Francis.  Plaintiff asserts federal question subject-matter jurisdiction under 28 U.S.C. §§ 1331

and 1343 based on his federal statutory claims alleged at Counts I–VI.

## II.     Procedural Background and Complications

The parties have created a procedural quagmire by failing to submit timely filings to the

Court.  Plaintiff filed his initial complaint in this Court on June 2, 2021.  [Dkt. 1].  After the

parties agreed to extend the opposition deadline to July 31, 2021, Defendants filed a timely

motion to dismiss the initial complaint on July 27, 2021.  [Dkt. 11, 13].  Without obtaining

Defendants' consent or leave from the Court, Plaintiff filed his Amended Complaint on August

24, 2021—twenty-eight days after Defendants filed their motion to dismiss—to address

deficiencies in his complaint.  [Dkt. 16].

The Amended Complaint violates Federal Rule of Civil Procedure 15.  Rule 15(a) states

that

> (1)     A party may amend its pleading once as a matter of course within:
> (A)     21 days after serving it, or
> (B)     if the pleading is one to which a responsive pleading is required,
>          21 days after service of a responsive pleading or 21 days after

3

service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2)  *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Plaintiff violated Rule 15(a)(1)(B) by filing his Amended Complaint more than twenty-one days after Defendants filed their initial motion to dismiss.[4] Plaintiff also violated Rule 15(a)(2) by filing his untimely Amended Complain without leave of Court or Defendants' consent.

Defendants compounded this problem with an untimely submission of their own. Defendants filed the present motion to dismiss on September 14, 2021, twenty-one days after Plaintiff filed his amended Complaint. [Dkt. 17]. Rule 15(a)(3) provides fourteen days to respond to an amended pleading. Defendants argue that Rule 15(a)(3) only contemplates the time to oppose amended complaints filed in compliance with Rule 15. [Dkt. 17-1 at 14–15]. Defendants do not cite any authority for this proposition, or explain which provision of the Federal Rules of Civil procedure *would* govern challenges to amended complaints that do not comply with Rule 15. Moreover, if Rule 15(a)(3) only governed responses to properly filed amended complaints, parties would be free to challenge amended complaints that fail to comply with Rule 15(a)(1) or (2) at their leisure. Thus, the Court disagrees with Defendants' argument that their motion is proper despite being untimely.

Rather than file an opposition brief, Plaintiff cross-moved for an order retroactively granting Plaintiff leave to amend his complaint. [Dkt. 19-1]. Plaintiff argues that the proposed

---

[4] As Defendants point out in the brief supporting their second motion to dismiss, the Amended Complaint substantively responds to the legal arguments which Defendants raised in their initial motion to dismiss. [*E.g.* Am. Compl. ¶¶ 44–50]. It also includes a host of hypothetical questions and musings that in no way set forth the factual basis for Plaintiff's theory of recovery. [*E.g.* Am. Compl. ¶ 56 ("A doctor cannot simultaneously claim to be bound by the Hippocratic Oath yet stand by and actively let his patient die, rather than taking action, and then claim he had no affirmative duty to intervene.")].

amendments are not futile because the amendments would withstand challenge on a motion to dismiss. [Dkt. 19-1 at 6–7]. In making this argument, Plaintiff essentially opposes the merits of Defendants' motion to dismiss because the standard for evaluating the futility of an amendment is the same as the standard for evaluating a motion to dismiss. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted. In assessing futility the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." (citations and quotations omitted)). Plaintiff also argues that the Court should not consider Defendants' arguments to the contrary because, as stated above, Defendants' motion to dismiss is untimely. [Dkt. 19-1 at 7–8].

Defendants then opposed Plaintiff's cross-motion, arguing that the motion for leave was untimely, that Plaintiff failed to comply with Local Rule 15.1, and that that the amendments are futile. [*See* Dkt. 20]. With respect to the Local Rule 15.1 argument, Defendants argue—correctly—that the motion for leave failed to indicate whether the motion was opposed, provide a copy of the proposed amended pleading, and identify the differences between the original and amended pleading as Local Rule 15.1 requires.

The Court must determine where to begin its analysis in light of these procedural missteps. Two (or three) wrongs do not make a right, and the Court is reluctant to bless Plaintiff's "file now and ask later" approach to his amended complaint, particularly when he ignored Local Rule 15.1 altogether. But it would be inefficient to return the case to the *status quo ante* by rejecting all of the filings at issue here for procedural defects. *See* Fed. R. Civ. P. 1 (noting that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court … to secure the just, speedy, and inexpensive determination of every action…."); *Travelers Cas. & Sur. Co. of Am. v. A.G. Cullen Const., Inc.*, No. CIV.A 07-0765,

2009 WL 2232906, at *5 (W.D. Pa. July 24, 2009) ("[T]he Court has discretion to set the case management deadlines in a manner to promote the goals of speedy and efficient resolutions of all actions."). It would also be unfair to selectively forgive the errors of one party while penalizing the other's. Thus, the Court will treat Plaintiff's amended complaint and Defendant's motion to dismiss as if they had been filed in a timely manner, and dismiss Plaintiff's cross-motion for leave to amend as moot.

The Court believes that this approach does not cause either party undue prejudice or deprive them of an opportunity to present their respective positions. As noted above, the Court must apply the same standard of review to Rule 12(b) and Rule 15 challenges, and both parties have filed their respective motions with this standard in mind.

Moreover, the Court will review the Amended Complaint substantively to assure itself that it has jurisdiction over this case. *See Simon v. Mullgrav*, No. CV 2017-0007, 2021 WL 4005585, at *5 (D.V.I. Sept. 1, 2021) ("Indeed, federal courts have a 'continuing obligation to assure that [they] have jurisdiction,' and thus are required, if necessary, to raise the issue of standing sua sponte." (quoting *Wayne Land & Min. Grp., LLC v. Del. River Basin Comm'n*, 959 F.3d 569, 574 (3d Cir. 2020))). Defendants' Motion to Dismiss targets Plaintiff's claims under 42 U.S.C. §§ 1983 and 1985(3) at Counts I–V, which provide Plaintiff's sole basis for subject-matter jurisdiction. If Plaintiff has failed to adequately plead these federal claims, then the Court must determine whether to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. 28 U.S.C. § 1367(c)(3). Typically, it is improper to do so after a court dismisses federal claims at the pleading stage. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial ... the state claims should be dismissed as well."); *Denkins v. State Operated Sch. Dist. of the City of Camden*, No.

6

116CV00653JBSAMD, 2016 WL 6683541, at *9 (D.N.J. Nov. 14, 2016), *aff'd sub nom. Denkins v. State Operated Sch. Dist. of City of Camden*, 715 F. App'x 121 (3d Cir. 2017) ("[W]here federal question claims are dismissed on motion at an early stage of the case, the District Court will generally dismiss the remaining related claims by declining supplemental jurisdiction." (citations omitted)).  Thus, the Court will review the Amended Complaint to confirm it has jurisdiction to hear this case.

### III.    Standard of Review for Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim.  *Id.*  In general, only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration when deciding a motion to dismiss under Rule 12(b)(6).  *See Chester County Intermediate Unit v. Pa. Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990).  It is not necessary for the plaintiff to plead evidence.  *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977).  The question before the Court is not whether the plaintiff will ultimately prevail.  *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d. Cir. 2007).  Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[2] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[2] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.

The Court need not accept "unsupported conclusions and unwarranted inferences," *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citation and quotation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness."  *Wyeth v. Ranbaxy Labs., Ltd.*, 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." (quoting *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005))).  *Accord Iqbal*, 556 U.S. at 678–80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Twombly*, 550 U.S. at 555 (internal citations omitted).  *See also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 556 (internal citations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

8

IV.    **Analysis**

   a.  **42 U.S.C. § 1983 Claims Predicated on Fourteenth Amendment Violations**

Counts I–III of the Amended Complaint allege that Officer Francis violated Plaintiff's

Fourteenth Amendment rights by (I) failing to intervene and arrest Small when Officer Francis

witnessed the altercation between Plaintiff and Small; (II) being deliberately indifferent to the

risk of harm to Plaintiff during that altercation; and (III) enforcing the law in a selective and

discriminatory manner.  Plaintiff alleges that each of these violations entitles him to recover

against Officer Francis under 42 U.S.C. § 1983.  Counts IV and V allege that the City of Atlantic

City is liable under § 1983 for adopting an "unconstitutional custom or policy" and for "failing to

properly train and supervise" its police officers.

   "Section 1983 is an enabling statute that does not create any substantive rights, but

provides a remedy for the violation of federal constitutional or statutory rights.  *Suber v. Guinta*,

902 F. Supp. 2d 591, 602–03 (E.D. Pa. 2012) (citing *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir.

2000)).  "To state a § 1983 claim, a plaintiff must demonstrate the defendant, acting under color

of state law, deprived him or her of a right secured by the Constitution or the laws of the United

States." *Bilbili v. Klein*, 249 F. App'x 284, 287 (3d Cir. 2007) (citations and quotations omitted).

Thus, "[t]he first step in evaluating a [§] 1983 claim is to identify the exact contours of the

underlying right said to have been violated and to determine whether the plaintiff has alleged a

deprivation of a constitutional right at all." *Id.* (quoting *Nicini v. Morra*, 212 F.3d 798, 806 (3d

Cir. 2000)) (alteration in original)).

   In this case, Plaintiff alleges that he can recover under § 1983 because Defendants

violated his rights under the Fourteenth Amendment's Due Process Clause and Equal Protection

Clause.  As explained below, Counts I–V assert distinct theories of recovery based on these alleged Fourteenth Amendment violations.

### i.  Failure to Intervene or Arrest—Count I

Plaintiff first alleges that Officer Francis violated Plaintiff's due process rights by failing to arrest Small or prevent Small from verbally threatening Plaintiff.  This claim fails because Plaintiff has not alleged a cognizable Fourteenth Amendment violation.

Two legal standards potentially apply to Plaintiff's "failure to intervene" theory, but Plaintiff's claim fails under both.  The first—discussed by the parties in their briefing—concerns an individual's Fourteenth Amendment right to have state actors protect against injury by private third parties.  The Fourteenth Amendment's Due Process Clause provides that "[n]o state shall … deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV § 1.  As the plain text of the Fourteenth Amendment makes clear, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens **against invasion by private actors**."  *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) (emphasis added); *accord Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 768 (2005) ("[T]he benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations.").  Thus, "the Due Process Clauses generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of **which the government itself may not deprive the individual**."  *DeShaney*, 489 U.S. at 195 (collecting cases) (emphasis added).

If this standard applies, as both parties suggest it does, Plaintiff's claim fails.  Courts have consistently found that individuals cannot state a § 1983 claim based on law enforcement's alleged failure to protect them from harm.  *See, e.g.*, *Popiolek v. Twp. of Deptford*, No. CV 15-3291 (RBK/AMD), 2015 WL 9462909, at *3 (D.N.J. Dec. 23, 2015) (finding that the plaintiff "'has no constitutional right or other federal right or guarantee that operates to require the [officers to arrest his assailants]' even if his allegations are true." (quoting *Jones v. Delaney*, 610 F. Supp. 2d 46, 50 (D.D.C. 2009))); *see also McGhee v. Acosta*, No. CV 20-116-FMO (AGR), 2020 WL 4353680, at *3 (C.D. Cal. Mar. 16, 2020) (collecting cases); *Barresi v. City of Bos.*, 345 F. Supp. 3d 98, 102 (D. Mass. 2018).  The Court sees no reason to find otherwise.[5]

As the bolded text above demonstrates, this standard applies to claims that government officials failed to protect an individual from harm inflicted by "private actors."  *DeShaney*, 489 U.S. at 195.  However, the Amended Complaint alleges that Small "acted under the color of state law and in his official capacity" during the altercation in question.  The Third Circuit has

---

[5] In his Amended Complaint, Plaintiff contends that *Popiolek*—upon which Defendants rely extensively in their briefing—is inapposite because the plaintiff in that case alleged that the failure to arrest occurred after the third-party already harmed the Plaintiff.  By contrast, Plaintiff points out, Officer Francis did not arrest Small as the alleged injury was occurring.  [Dkt. 16 ¶¶ 44–48].  The Court need not consider such legal argument included in a complaint.  *Kanter*, 489 F.3d at 177 ("[A] court need not credit … 'legal conclusions' in a complaint when deciding a motion to dismiss.").  Even if it did, the Supreme Court's sweeping determination that "the Due Process Clauses generally confer[s] no affirmative right to governmental aid" renders this distinction meaningless.  *DeShaney*, 489 U.S. at 195.

Plaintiff also cites the Atlantic City Police Department's mission statement to argue that "[t]o the extent the Amended Complaint relies on theories of failure to act, any supposed immunity is countered by Defendants' own policy to '[t]o promote public safety; [and] to prevent, suppress and investigate crimes.'"  [Dkt. 19-1 at 11].  But the question here is not whether Officer Francis had a civic or professional duty to intervene.  Rather, the issue is whether Officer Francis violated Plaintiff's constitutional rights by failing to intervene.  Plaintiff has not cited any authority stating that a police department's mission statement creates a constitutional right where the Supreme Court has repeatedly found that none exists.  *See, e.g., Town of Castle Rock*, 545 U.S. at 768; *DeShaney*, 489 U.S. at 195.

acknowledged that, in some circumstances, a state actor can be held liable under § 1983 for

failing to intervene when another state actor violates a third party's constitutional rights.  For

example, "a corrections officer's failure to intervene in a beating [by another corrections officer]

can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections

officer had a reasonable opportunity to intervene and simply refused to do so."  *Smith v.*

*Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002).  Similarly, "[a] police officer is liable under §

1983 when he 'fails or refuses to intervene when a constitutional violation such as an

unprovoked beating takes place in his presence.'"  *Thorpe v. City of Phila.*, No. CV 19-5094,

2020 WL 5217396, at *10 (E.D. Pa. Sept. 1, 2020) (quoting *Smith*, 293 F.3d at 650).  Under

these circumstances, a police officer may be held liable under § 1983 where the officer (1)

knows of and acquiesces to (2) the unconstitutional treatment of another in his presence, and (3)

fails or refuses to intervene despite having a realistic and reasonable opportunity to intervene.

*See Thorpe*, 2020 WL 5217396, at *10 (citations and quotations omitted); *Tafari v. McCarthy*,

714 F. Supp. 2d 317, 342 (N.D.N.Y. 2010) (citations and quotations omitted).

    Even if this standard applies,[6] Plaintiff's claim fails at element (2) because he has not

alleged that Officer Francis witnessed a constitutional violation.  The Amended Complaint

---

[6] The Court is reluctant to extend this failure to intervene theory of liability to the facts of this
case.  Courts in the Third Circuit generally apply this theory where police officers or corrections
officers fail to intervene as another officer physically harms an individual while that individual is
in custody or while bringing that individual into custody.  *See, e.g.*, *Smith*, 293 F.3d at 650–51
(addressing liability for correction's officer's failure to intervene when other corrections officers
beat an inmate); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995) (addressing
liability for use of force by police officers during a drug raid).  Courts in this circuit have
declined to stray from this general fact pattern.  *See Thorpe*, 2020 WL 5217396, at *10–11;
*Ekwunife v. City of Philadelphia*, 245 F. Supp. 3d 660, 672–73 (E.D. Pa. 2017), *aff'd*, 756 F.
App'x 165 (3d Cir. 2018) (dismissing claim against district attorney for failing to intervene in a
police officer's fabrication of evidence and use of false information in an affidavit).

alleges that Small verbally threatened Plaintiff.  [*E.g.* Am. Compl. ¶ 26].  But "[i]t has been long recognized that mere verbal threats, in and of themselves, do not give rise to constitutional violations, and are thus not actionable under § 1983."  *Jacobs v. Bayha*, No. CIV.A. 07-237, 2010 WL 3895768, at *4 (W.D. Pa. Sept. 30, 2010) (collecting cases); *accord Lewis v. Wetzel*, 153 F. Supp. 3d 678, 698 (M.D. Pa. 2015) ("[M]ere verbal harassment is not actionable under § 1983." (collecting cases)); *Green v. Thoryk*, 30 F. Supp. 2d 862, 864 (E.D. Pa. 1998) ("[V]erbal threats without subsequent harm or threat of harm do not ordinarily rise to the level of a section

---

Further, the law in this area is unclear as to whether, in order for an officer to be liable under § 1983 for failing to intervene, the state actor who deprives an individual of constitutional rights must merely be a "state actor" or whether that state actor must cause the constitutional violation while acting under the color of law.  *See* 42 U.S.C. § 1983 ("Every person who, under color of any statute … custom, or usage of any State…."); *but see Thorpe*, No. CV 19-5094, 2020 WL 5217396, at *10 (noting that liability may attach where one "state actor" harms a third party and another "state actor" fails to intervene without discussing a "color of law" requirement).

If it is sufficient that the person causing the constitutional violation is a "state actor," then liability could attach to Officer Francis because the Amended Complaint alleges that Small was the Mayor of Atlantic City during the altercation.  [Am. Compl. ¶ 6].  *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("[S]tate employment is generally sufficient to render the defendant a state actor." (citations and quotations omitted)).

The issue is more complicated, however, if Plaintiff must also allege that Small acted under the color of state law.  "Although a public employee generally acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law[,] a state employee or officer whose purely private acts were not furthered by any actual or purported state authority will not be found to have acted under color of state law."  *Fiscella v. Twp. of Belleville*, No. 216CV760KSHCLW, 2016 WL 7015627, at *3 (D.N.J. Dec. 1, 2016) (citations and quotations omitted); *accord Suber v. Guinta*, 902 F. Supp. 2d 591, 603 (E.D. Pa. 2012) ("A defendant acts under color of state law when he exercises power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" (quoting *West*, 487 U.S. at 49).  The Amended Complaint does not allege any facts suggesting that Small was "acting in his official capacity" or "exercising his official duties" during his altercation with Plaintiff.  An individual need not be an elected official to campaign for election, and the Court's research did not identify any official duty that requires elected officials to campaign for reelection.

The Court need not resolve this unsettled legal question because the Amended Complaint fails to allege that Small violated Plaintiff's constitutional rights.

13

1983 deprivation." (collecting cases)).  Thus, under either standard, Plaintiff cannot state a claim

based on Officer Francis's failure to intervene in the confrontation between Small and Plaintiff.

### 1.  State-Created Danger

In his motion for leave, Plaintiff argues that the state-created danger exception to the

general rule that individuals have no constitutional right to government protection applies in this

case.  [Dkt. 19-1 at 8–9].  Under the state-created danger doctrine "a plaintiff can allege a

substantive due process violation under § 1983 by showing that the harm suffered at the hands of

third parties was a direct result of state action."  *Bilbili*, 249 F. App'x at 287 (citing *Kneipp v.

Tedder*, 95 F.3d 1199 (3d Cir. 1996)).  To state a claim under this doctrine, a plaintiff must show

that

(1)    the harm ultimately caused was foreseeable and fairly direct;

(2)    a state actor acted with a degree of culpability that shocks the conscience;

(3)    a relationship between the state and the plaintiff existed such that the plaintiff was
       a foreseeable victim of the defendant's acts, or a member of a discrete class of
       persons subjected to the potential harm brought about by the state's actions, as
       opposed to a member of the public in general; and

(4)    a state actor affirmatively used his or her authority in a way that created a danger
       to the citizen or that rendered the citizen more vulnerable to danger than had the
       state not acted at all.

*Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006) (citations and quotations

omitted).  "It is important to stress … that under the fourth element … '[l]iability under the state-

created danger theory is predicated upon the states' affirmative acts which work to the plaintiffs'

detriments in terms of exposure to danger.'"  *Id.* (quoting *D.R. by L.R. v. Middle Bucks Area Vo.

Tech. School*, 972 F.2d 1364, 1374 (3d Cir. 1992)).

In his brief, Plaintiff appears to argue that Officer Francis caused a "state-created danger"

when he failed to intervene as Small made "terroristic threats" toward Plaintiff.  [Dkt. 19-1 at 8–

9].  Even assuming that Plaintiff adequately pleads elements (1)–(3), the claim against Officer

Francis fails at element (4) because it relies entirely on inaction rather than "affirmative acts."

*Bright*, 443 F.3d at 282 ("[W]e have never found a state-created danger claim to be meritorious

without an allegation and subsequent showing that state authority was affirmatively exercised.").

Because Plaintiff fails to allege that Officer Francis affirmatively exercised his authority to harm

Plaintiff, Plaintiff's state-created danger claim fails.

### ii.  Deliberate Indifference (Count II)

Count II of Plaintiff's Amended Complaint alleges a § 1983 claim based on Officer

Francis's deliberate indifference "to the risk of physical violence, both in violation of Defendant

Officer Francis's duty to [sic] as a police officer to protect the public, and in violation of

Plaintiff's constitutional right to personal safety and equal protection under the law."  [Am.

Compl. ¶ 76].  The Court is unclear as to the nature of this claim.  "Deliberate indifference" is

not a constitutional right.  Rather, it is a standard of culpability applied in certain § 1983 claims

based on Fourteenth Amendment violations, among others.  For example, deliberate indifference

is the level of culpability that applies to the second element of a state-created danger claim—

concerning whether a state actor's conduct "shocks the conscience"—"in cases where

deliberation is possible and officials have the time to make 'unhurried judgment.'"  *Sanford v.

Stiles*, 456 F.3d 298, 309 (3d Cir. 2006).[7]  In his opposition brief, Plaintiff appears to argue that

---

[7] Deliberate indifference is also the culpability that a plaintiff must establish in a § 1983 claim
against a municipality for failure to adequately train police.  *See City of Canton, Ohio v. Harris*,
489 U.S. 378, 388 (1989) ("We hold today that the inadequacy of police training may serve as
the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to
the rights of persons with whom the police come into contact.").  It is also the standard applied in
§ 1983 claims based on Eighth Amendment violations for cruel and unusual punishment for
failure to provide adequate medical care to inmates.  *See, e.g.*, *Gannaway v. Prime Care Med.,
Inc.*, 150 F. Supp. 3d 511, 527 (E.D. Pa. 2015*), aff'd sub nom. Gannaway v. PrimeCare Med.,
Inc.*, 652 F. App'x 91 (3d Cir. 2016).

his deliberate indifference allegation at Count III applies to his state-created danger theory of liability.  [Dkt. 19-1 at 8–9].

Assuming the Court's interpretation of Plaintiff's position is correct, the Court finds that Plaintiff has failed to state a claim for several reasons.  First, "deliberate indifference" is not the appropriate standard to determine whether Officer Francis's conduct "shocked the conscience."

> The level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases.  In a 'hyperpressurized environment,' an intent to cause harm is usually required.  On the other hand, in cases where deliberation is possible and officials have the time to make 'unhurried judgments,' deliberate indifference is sufficient.

*Sanford*, 456 F.3d at 309.  In middle-ground situations where a state actor must act "in a matter of hours or minutes," a plaintiff must show that the state actor "disregard[ed] a great risk of serious harm."  *Id.* at 310 (citations omitted).

The deliberate indifference standard does not apply here because the Amended Complaint does not plead facts showing that Officer Francis had sufficient time to make an "unhurried judgment."  Plaintiff does not allege that the entire altercation between himself and Small lasted more than a few minutes, let alone a few hours.  One video of the altercation cited in the Amended Complaint lasts ninety-seven seconds [Am. Compl. ¶ 23], and the Amended Complaint does not allege Small threatened Plaintiff long before or after this ninety-seven-second window.  Moreover, as the same video shows, Plaintiff and Small were among a crowd of people, many of whom were also screaming.  Because Officer Francis had mere minutes or seconds to deliberate before acting in the altercation between Plaintiff and Small in the midst of a screaming crowd, the deliberate indifference standard does not apply.

Even if the Court construed facts generously in favor of Plaintiff to find that the "middle-ground" standard applies, the court still finds that the Amended Complaint does not plead facts

to show that Officer Francis disregarded "a great risk of serious harm" to Plaintiff.  Two cases from this district provide instructive contrast.  In *Van Orden v. Borough of Woodstown*, the plaintiff was the surviving mother of a woman who died in her vehicle after town officials opened a dam that released millions of gallons of water and flooded the road upon which the decedent was driving.  5 F. Supp. 3d 676, 683–84 (D.N.J. 2014).  Judge Simandle found that that disregard of serious harm could be inferred because "[r]eleasing 'raging flood water' capable of enveloping roads and bridges and causing serious bodily injury or death, without taking safety measures to protect citizens, certainly could be considered conduct that shocks the conscience." *Id.* at 684.

In *Pagan v. Rivera*, the two plaintiffs were having breakfast together when one (Pagan) received a threatening text message from her ex-boyfriend that led Pagan to believe that he had broken into her home.  No. CV197176KMESK, 2020 WL 2060274, at *1 (D.N.J. Apr. 29, 2020).  The boyfriend had previously been violent towards Pagan and she had a standing protective order against him.  *Id.*  The plaintiffs reported this information to a police officer who accompanied the plaintiffs to Pagan's home.  *Id.*  The officer ordered Pagan to enter the home twice to retrieve a copy of the protective order and her identification while her friend waited with the officer.  *Id.*  During one trip inside the home, the boyfriend attacked Pagan from within the home.  Pagan's friend heard Pagan's screams from outside the home and ran into the home where the boyfriend attacked her as well.  *Id.*  The officer remained at his vehicle without helping Pagan.  *Id.*  Based on these allegations, the court found that the plaintiffs adequately stated that the officer disregarded a great risk of serious harm.  *Id.* at *6.

The present case differs from these two examples in two important respects.  First, both involve significant physical harm: death by drowning and physical attack, respectively.  Here,

Plaintiff does not allege that Small ever physically harmed or touched Plaintiff in any way during their purely "verbal altercation."  [Am. Compl. ¶¶ 8, 26].  Nor does Plaintiff allege that Small even attempted to physically harm Plaintiff.  Thus, rather than "disregard" the risk of physical harm, the Amended Complaint states that Officer Francis accurately assessed the risk of physical harm to Small, because no such harm occurred.  Plaintiff does allege that Small threatened him. [*E.g.* Am. Compl. ¶ 38].  But Plaintiff has not cited, and the Court's research has not revealed, any examples where courts have allowed claims for "conscious-shocking" disregard to stand absent allegations of serious physical harm.  *Green*, 30 F. Supp. 2d at 864 ("[V]erbal threats without subsequent harm or threat of harm do not ordinarily rise to the level of a section 1983 deprivation.").

Second, in both examples, the plaintiffs' complaints permitted a plausible inference that the state actors could have prevented the serious harm if they did not "disregard" the danger. Here, Plaintiff does not even allege as much in a conclusory manner.  The Amended Complaint only alleges that Officer Francis should have arrested Small *after* Small threatened Plaintiff and *because* Small threatened Plaintiff.  [Am. Compl. ¶ 31].  In other words, a *post facto* arrest could not have prevented Small from threatening Plaintiff in the first instance.  Moreover, it is unclear to the Court what Officer Francis could have done to prevent Small from verbally threatening Plaintiff even if Francis *did* arrest Small.  To find that an arrest would have prevented Small from threatening plaintiff during this brief altercation would require pure speculation.  *See Twombly*, 550 U.S. at 555 (noting that a complaint must plead facts sufficient "to raise a right to relief above the speculative level").

Thus, assuming that Count II of the Amended Complaint alleges a state-created danger claim and aims to satisfy the second element of the state-created danger test by establishing

"deliberate indifference," the Amended Complaint both misstates and fails to satisfy the proper standard.  Even if the Amended Complaint properly pleads the second element, Plaintiff's state-created danger claim would still fail at element (4) because, as stated above, the Amended Complaint fails to allege that Officer Francis's "affirmative actions" caused Plaintiff harm.  *See Sanford*, 456 F.3d at 311.  The Court will therefore grant Defendants' motion to dismiss Count II of the Amended Complaint.

### iii. Equal Protection—Selective and Discriminatory Law Enforcement (Count III)

Count III of the Amended Complaint asserts that Officer Francis violated his Fourteenth Amendment rights to equal protection under the law.  The Fourteenth Amendment's Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  "To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination.... They must demonstrate that they received different treatment from that received by other individuals similarly situated."  *Holley v. Port Auth. of N.Y. & N.J.*, No. 3:14-CV-7534-BRM-DEA, 2018 WL 4953008, at *2 (D.N.J. Oct. 12, 2018) (quoting *Chambers ex rel. Chambers v. Sch. Dist. Of Phila.*, 587 F.3d 176, 196 (3d. Cir. 2009)).

Plaintiff's equal protection claim cannot survive.  Plaintiff alleges that New Jersey's laws prohibiting terroristic threats "were selectively enforced against him, or rather, not enforced as against Mayor Small."  [Am. Compl. ¶ 86].  This allegation exposes the principle flaw in Plaintiff's claim.  Plaintiff does not assert facts suggesting Officer Francis *enforced* laws in any manner—let alone selectively—against *Plaintiff*.  Rather, Plaintiff alleges that Officer Francis did *not enforce* any laws when, in fact, he should have.  Plaintiff has not identified—and the Court's research did not reveal—any authority for the proposition that a due process violation for

19

selective law enforcement can follow from single instance of selective *nonenforcement* of any law.  *Cf. PG Pub. Co. v. Aichele*, 705 F.3d 91, 115–16 (3d Cir. 2013) ("It is well-established that 'the conscious exercise of some selectivity in enforcement [of a law] is not in itself a federal constitutional violation.'" (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962))).  Rather, as the Court understands it, Plaintiff's equal protection argument merely recasts his failure to arrest argument and again seeks to hold Officer Francis accountable for failing to intervene in the confrontation between Small and Plaintiff.  The Court rejected that argument above and does so again here.  The Court will therefore grant Defendants' motion to dismiss Count III of the Amended Complaint.

### iv.   Municipal Liability under *Monell*—Counts IV and V

Counts IV and V of the Amended Complaint seek to hold the City of Atlantic City liable for violations of Plaintiff's constitutional rights.  Count IV alleges that Atlantic City has a custom or policy of having police officers serve as bodyguards or escorts for public officials and instructing them to selectively enforce laws in favor of the public officials when doing so.  [Am. Compl. ¶¶ 94–110].  Count V alleges that Atlantic City failed to properly train and supervise its police officers to ensure that the officers would not "abuse their authority" by selectively enforcing laws and "look the other way" when elected officials violate citizens' constitutional rights.  [Am. Compl. ¶¶ 114–15].

"[A] municipality can only be liable under Section 1983 when a constitutional injury results from the implementation or execution of an officially adopted policy or informally adopted custom."  *Wilson v. City of Philadelphia*, 177 F. Supp. 3d 885, 908 (E.D. Pa. 2016) (citing *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)).  To state a claim for municipal liability, plaintiffs must allege "(1) an underlying constitutional violation; (2) a policy

or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom" or deliberate indifference to the constitutional rights of others. *Id.* (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *Taylor v. Pennsylvania*, No. CV 17-3369, 2018 WL 6574187, at *7 (E.D. Pa. Dec. 12, 2018) (citations omitted).

Plaintiff cannot meet element (1) because, as discussed above, Plaintiff repeatedly fails to state an underlying constitutional violation. The Court will therefore grant Defendants' motion to dismiss Count IV of the Amended Complaint.

### b. 42 U.S.C. § 1985(3) Claim for Civil Conspiracy to Interfere with Civil Rights as to Defendants Small and Francis—Count VI

Count VI of the Amended Complaint alleges that Defendants Small and Francis conspired to deprive Plaintiff of his constitutional rights under 42 U.S.C. § 1985(3). "Section 1985(3) provides a private cause of action for damages incurred '[i]f two or more persons ... conspire ... for the purpose of depriving ... any person of the equal protection of the laws.'" *Suber v. Guinta*, 902 F. Supp. 2d 591, 608 (E.D. Pa. 2012) (quoting 42 U.S.C. § 1985(3)). To state a claim under § 1985(3), a plaintiff must allege

> (1)   a conspiracy;
>
> (2)   for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and
>
> (3)   an act in furtherance of the conspiracy;
>
> (4)   whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quoting *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983)).

21

"A conspiracy—an agreement to commit an unlawful act—is a necessary element of a claim under section 1985…. [I]t is not enough to use the term 'conspiracy' without setting forth supporting facts that tend to show an unlawful agreement." *Suber*, 902 F. Supp. 2d at 608 (citations and quotations omitted); *accord Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 648 (E.D. Pa. 2014) ("Specific allegations of an agreement to carry out the alleged chain of events is essential in stating a claim for conspiracy." (citing *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997))). "To constitute a conspiracy, there must be a 'meeting of the minds.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).

Plaintiff's conspiracy claim fails at this first element. Plaintiff alleges that

> [t]he existence of this conspiracy is evidenced by the fact that,
> once Defendant Small issued the terroristic threat of violence to
> Plaintiff, Plaintiff stated to Defendant Officer Francis, "He
> threatened me," (referring to Defendant Small), to which
> Defendant Officer Francis simply responded, "I know," but took
> no affirmative law enforcement action against Defendant Small in
> response to the violation.

[Am. Compl. ¶ 126]. Officer Francis's mere acknowledgement that an event occurred does not permit a plausible inference that he and Small had a "meeting of the minds" to engage in unlawful conduct. *Startzell*, 533 F.3d at 205. Nor does Officer Francis's failure to respond to Small's conduct permit an inference that the two agreed to act in concert to deprive Plaintiff of equal protection under the law. *See Twombly*, 550 U.S. at 557 ("[P]arallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."); *Rosembert*, 14 F. Supp. 3d at 648 ("It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." (citations and quotations

omitted)).  Because Plaintiff has failed to plead sufficient facts to satisfy element (1) of his conspiracy claim, the Court will grant Defendants' motion to dismiss Count VI of the Amended Complaint.

### c.   Remaining Claims

Counts VII–XI of the Amended Complaint allege claims under New Jersey statutes and common law.  As noted above, the Amended Complaint relies entirely on Plaintiff's §§ 1983 and 1985 claims to establish federal question subject-matter jurisdiction under 28 U.S.C. § 1331. Because the Court has dismissed all of Plaintiff's federal claims alleged at Counts I–VI above, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims.  *See* 28 U.S.C. § 1367(c)(3); *Gibbs*, 383 U.S. at 726 ("[C]ertainly, if the federal claims are dismissed before trial ... the state claims should be dismissed as well."); *Denkins*, 2016 WL 6683541, at *9 ("[W]here federal question claims are dismissed on motion at an early stage of the case, the District Court will generally dismiss the remaining related claims by declining supplemental jurisdiction.").  The Court will therefore dismiss Counts VII–XI for lack of subject-matter jurisdiction.

### V.   Conclusion

For the reasons discussed above, the Court will grant Defendants' Motion to Dismiss Plaintiff's Amended Complaint.  Due to the procedural complications discussed at the beginning of this opinion, the Court will dismiss all claims without prejudice.  If Plaintiff wishes to file an amended complaint in this Court, he must do so within fifteen days (by January 6, 2022) and fully comply with Local Rule 15.1.  If Plaintiff does not file a timely amended complaint or

provide the Court with good cause to extend the deadline, the Court will enter an order dismissing the case with prejudice.  An appropriate order will follow.


December 22, 2021                                          /s/ Joseph H. Rodriguez

                                                            Hon. Joseph H. Rodriguez, USDJ